## State of Connecticut *v.* Richard Boutwell
## (6411)

Dupont, C. J., Daly and Foti, Js.

Argued December 13, 1988—decision released May 2, 1989

*Arthur P. Meisler,* with whom, on the brief was *Pamala J. Favreau,* law student intern, for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom, on the brief, was *John H. Malone,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from judgments of conviction, rendered after a jury trial, of three counts each of sexual assault in the first degree in violation of General Statutes § 53a-70 (a), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and risk of injury to a child in violation of General Statutes § 53-21, and one count of sexual assault in the third degree in violation of § 53a-72a (a) (1). The defendant claims that the trial court erred (1) in refusing to conduct an in camera review of the psychiatric records of the two complaining witnesses, and (2) in granting the state's motion for closure. We find error in part on the first issue.

This case involves allegations by two minor females, M and C, that the defendant sexually abused them while they were living in his home as foster children. M and C are siblings who, along with their other sister X, were placed by the department of children and youth services (DCYS) in the defendant's home in December, 1981. M testified that she lived with the defendant and his wife for approximately one and one-half years. One evening in the spring of 1982, when M was six years old, her foster mother and sisters went to play bingo and she was left alone in the house with the defendant. While M was watching television in the living room,

the defendant called her into his bedroom. The defendant removed her shirt and told her to remove her pants. The defendant then got on top of M and vaginal penetration occurred. This abuse continued twice weekly for several months. M did not mention these events to anyone until several years later, in 1985, after her adoption by a different family.

C testified that on an evening in April, 1984, when she was eleven years old, she was alone in the house with the defendant. While C and the defendant were watching television, the defendant sexually assaulted her with vaginal penetration occurring. Similar assaults occurred on two other occasions. In addition, C testified that the defendant kissed and fondled her often. While still living in the defendant's home, C told her biological mother about the assaults and the mother contacted the Enfield police department. Upon questioning, C denied she was assaulted by the defendant. Subsequently, after running away from the defendant and his wife and being placed in another foster home, C again disclosed that the defendant had sexually assaulted her.

## I

In the defendant's first assignment of error, he claims that his federal[1] and state[2] constitutional rights to con-

---

[1] The sixth amendment to the United States constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . . " "The right to confrontation is made obligatory on the states by the fourteenth amendment to the United States constitution. *Pointer* v. *Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); *State* v. *Reardon,* 172 Conn. 593, 599, 376 A.2d 65 (1977)." *State* v. *Hufford,* 205 Conn. 386, 401 n.7, 533 A.2d 866 (1987).

[2] Article first, § 8, of our Connecticut constitution contains a provision virtually identical to the federal provision: "In all criminal prosecutions, the accused shall have the right . . . to be confronted by the witnesses against him . . . ."

frontation were violated by the trial court's refusal to grant an in camera review of the complainants' psychiatric records. In particular, the defendant asserts that the trial court incorrectly applied the standard enunciated in *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 949 (1984), in determining whether the defendant made the requisite showing to entitle him to an in camera review of those records. The defendant argues that he either met the standard established by *Esposito* or that subsequent holdings have modified this standard establishing a less stringent burden on the defendant. We hold that the required threshold showing under *Esposito* was met.

Our resolution of this issue requires us, once again, to balance two conflicting interests: the defendant's right to effective cross-examination versus the witness' right to maintain the confidentiality of his or her personal psychiatric history. We have recently had occasion to address this issue in *State* v. *Petterson,* 17 Conn. App. 174, 551 A.2d 763 (1988). In *Petterson,* this court succinctly enunciated the standard for reviewing a claim of access to "known" psychiatric records as gleaned from our abundant case law in this area.

"When the records sought by the defendant are privileged,[3] the witness' right to privacy must be weighed against the defendant's right to bring to the jury's attention facts affecting the witness' credibility. *State* v. *Hufford,* [205 Conn. 386, 402, 533 A.2d 866 (1987)]; *State* v. *Storlazzi,* [191 Conn. 453, 458, 464 A.2d 829 (1983)]. In *Storlazzi,* the Supreme Court approved an in camera inspection by the trial judge of the records of the complaining witness for material relevant to the issue of credibility. After such examination, access to the records will be granted when the material is espe-

---

[3] General Statutes § 52-146e protects certain records relating to a person's psychiatric care from disclosure.

cially probative of the witness' ability to comprehend, know and correctly relate the truth. With respect to the admissibility of such records, however, 'access to "such [records] must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it"; [*State* v. *Piskorski,* 177 Conn. 677, 737, 499 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979)]; and to weigh that value against the interest in confidentiality of the records. Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis.' *State* v. *Storlazzi,* supra, 459; *State* v. *Hufford,* supra, 403." *State* v. *Petterson,* supra, 178–79.

"In *State* v. *Esposito,* supra, the court held that, in order to compel the trial court to inspect psychiatric records for potentially impeaching information, the defendant must make a showing that there is reasonable ground to believe that failure to produce the information is likely to impair the defendant's right of confrontation." Id., 179.

Our case law distinguishes between two types of situations and has established separate procedures for each. See *State* v. *Hufford,* supra, 403. Where the defendant, as in the present case, is fully aware of the existence of psychiatric records, the procedures set forth in *State* v. *Bruno,* 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986), and *State* v. *Esposito,* supra, control. Under this situation, the court will, after the requisite showing under *Esposito* has been made, conduct an in camera review of the records. Under circumstances in which the defendant either is uncertain as to whether privileged information exists or knows of the existence of psychiatric records, but is uncertain as to the existence of a witness' unrecorded psychiatric

history, however, the trial court must follow the procedures enunciated in *State* v. *Pierson,* 201 Conn. 211, 228, 514 A.2d 724 (1986). Under the latter situation, the trial court must conduct a voir dire of psychiatric personnel who may possess information related to the witness' unrecorded psychiatric history to discover whether such information exists, and whether it would be admissible. Id.

*State* v. *Pierson,* supra, enlarged upon *Esposito* by requiring the trial court to conduct a voir dire of psychiatric personnel for the purpose of determining the existence of unrecorded communications. The basic threshold requirement under *Esposito* that the defendant establish that there is a reasonable basis in the evidence for believing that known psychiatric records "may" contain information relating to a mental condition that "might" affect a witness' testimonial capacity; see *State* v. *Silva,* 201 Conn. 244, 256 n.2, 513 A.2d 1202 (1986); *State* v. *Hufford,* supra, 403–404; has not, as the defendant contends, been modified or eliminated by the holding in *Pierson.*

*Pierson* applies to situations in which there is a reasonable basis for the trial court to conclude that communications between the witness and the psychiatric personnel were not recorded and that those unrecorded communications may be relevant to the testimonial capacity of the witness. The voir dire is conducted of persons who may have information relating to the mental condition of a witness. *State* v. *Pierson,* supra, 228.

In *Pierson,* during the court's initial voir dire and after it had conducted the in camera inspection, the psychiatric counselor testified that during two conferences with the witness he had made no contemporaneous notes because the policy of his office was to make notations only at the beginning of each month for the previous month. He testified further that on five other

occasions he had consulted with the complainant for which there were no notations made whatsoever. *Pierson* did not change the requirement that the defendant make a threshold showing under *Esposito,* because the trial court in *Pierson,* for reasons not apparent on the record,[4] conducted an in camera inspection of the records sua sponte with the consent of the witness, and without objection by either the state or the defendant. The issue of whether the defendant made a threshold showing under *Esposito,* was not, therefore, before the court. The Supreme Court noted that if the threshold showing, required under *Esposito,* that the witness had a mental condition that affected his testimonial capacity had been required in *Pierson,* "it is doubtful that the evidence before us . . . would be sufficient to require the court to engage in a review of the psychiatric records of the complainant." *State* v. *Pierson,* supra, 226.

Cases decided subsequent to *Pierson* have similarly not modified the requirement in *Esposito* for a threshold showing. In *State* v. *Hufford,* supra, a voir dire was required to determine whether psychiatric records in fact existed, and if so whether those records contained admissible information. *Hufford* did not alter the requirements under *Esposito* where written records are known to exist and the defendant seeks access to them.

In *State* v. *Saraceno,* 15 Conn. App. 222, 243, 545 A.2d 1116 (1988), we recognized that an *Esposito* showing is a necessary preliminary requirement, after which the defendant must be afforded an opportunity to discover whether additional, unrecorded communications exist "to allow the use of the mental health records of a witness not only for the purposes of cross-examining

---

[4] Similarly, the circumstances surrounding the in camera inspection of the records in *State* v. *Herring,* 210 Conn. 78, 554 A.2d 686 (1989), are unknown.

the witness . . . through the examination and cross-examination of such mental health professionals who 'may have information relating to the mental condition of a witness that might affect his testimony . . . .' *State* v. *Pierson,* supra." (Emphasis omitted.) *State* v. *Saraceno,* supra, 243. "[T]he trial court, pursuant to *Esposito,* found that the mental health records did contain information relevant to the testimonial capacity of the witness and ordered the records released, in total, to the defendant." Id.

We conclude that while the Supreme Court has expanded *Esposito* to allow a defendant greater discovery of privileged psychiatric material, the burden of proof the defendant must meet in order to obtain an in camera review of "known" records enunciated in *Esposito* survives.

Having determined that the standard required under *Esposito* controls, we now turn to the issue of whether the defendant in this case met that standard. We first address the defendant's claim as it relates to M. In the present situation, after the state's direct examination of M, the defendant moved for disclosure of records concerning her adoption and interaction with case workers that were kept by DCYS, records concerning her admission, treatment and discharge from Riverview Hospital, the Newington Children's Hospital and Northcentral Mental Health Clinic, and her records in the Enfield school system. After this motion was denied, the defendant moved for an in camera review of those records. The court denied this motion only as it applied to the psychological or psychiatric records of M, on the ground that there had been no waiver of the patient-psychiatric privilege by M pursuant to General Statutes § 52-146c, and no preliminary showing made by the defendant as set forth in *State* v. *Esposito,* supra. The defendant then moved for an in camera review of the records other than psychological or psy-

chiatric for the purpose of discovering any relevant material. The court granted this motion. Thereafter, the defendant, for the first time, offered evidence to meet his burden under *Esposito.* Prior to the court's ruling, M, through the court appointed guardian ad litem, indicated that she had no objection to the court conducting an in camera inspection, subject to the court's finding that the defendant had sustained his required showing under *Esposito.*

The court permitted the defendant, outside the presence of the jury, to question M and the defendant's wife, for the purpose of making the requisite showing under *Esposito.* M was asked a series of questions with respect to her stays at the various hospitals, including the reason for admittance, and with whom she spoke while there. To virtually all of these questions, M stated she could not remember. The defendant next asked his wife a number of questions regarding M's behavior while she lived in their home and about M's medical history. The defendant's wife testified that M had difficulty getting along with the family, spent some time at the Riverview Hospital and was involved in other various programs during her stay at their home, which included the Newington Children's Hospital, the Child Guidance Clinic in Manchester, the Curtiss Home in Meriden, and the Casey Family Program. In addition, she testified that M had made accusations that a young neighbor abused her. The court denied the defendant's motion finding that he had not made the requisite showing under *Esposito,* and the records were sealed and marked as exhibits for identification.

We conclude that under the standard set forth in *State* v. *Esposito,* supra, the defendant sustained his burden of showing that M's records might contain information that could affect her testimonial capacity or credibility, thereby entitling him to have the court inspect those records in camera. Although evidence of

psychological or psychiatric consultation for "parent-child conflicts" may not be sufficient for the requirement or threshold showing pursuant to *Esposito; State* v. *Pierson,* supra, 226; the defendant demonstrated that M had spent some time in a number of children's psychiatric hospitals, had emotional and behavioral problems while at the Boutwells, had difficulty recollecting past events, and had accused a neighbor of abuse. This proof was sufficient under *Esposito* to allow the court to examine the records to determine whether they contained any evidence of M's mental condition significantly relating to her testimonial capacity. Further, the court was aware that M, on direct examination before the jury, stated that after leaving the Boutwell's house she had gotten into trouble for lying, and that event led to her telling her adoptive mother what had happened regarding her being sexually abused by the defendant.

We next turn to the defendant's claim that he should have had access to C's records. We decline to review this claim because the defendant has not properly preserved this matter for appellate review. Practice Book § 4185; see *State* v. *Lonergan,* 16 Conn. App. 358, 548 A.2d 718 (1988), cert. granted on other grounds, 210 Conn. 812, 556 A.2d 611 (1989). With respect to C, the trial court reviewed in camera and turned over to the defendant certain records from DCYS with the exception of those records deemed to relate to C's psychiatric history. The trial court did not review her Enfield school records because the attached subpoena stated that psychiatric records were enclosed. The defendant did not even attempt to make any showing that these records could contain information that would affect her testimonial capacity. Absent such a request by the defendant in the trial court, we decline to review his claim with respect to C.

This case must therefore be remanded for an in camera review of M's psychiatric records. If the court determines that the records contain no impeaching materials, the defendant's conviction will stand. If, on the other hand, the trial court determines that impeaching evidence is contained therein, M's permission to disclose such information to the defendant must be obtained. If M refuses, her testimony must be wholly stricken and, since she was the only witness to the crimes committed against her, the case must be dismissed as to those crimes. If she permits the defendant access to the records, the court must order a new trial as to the charges involving M only.

## II

The defendant's next claim is that he was denied his state and federal constitutional rights to a public trial[5] by the trial court's decision to grant the state's motion for closure. The following procedural facts are relevant to this issue. Prior to trial, the state moved, pursuant to Practice Book § 895, to exclude the public from the courtroom during the testimony of the two minor victims. Initially, after some brief discussion, the trial court granted the state's motion. The next day, however, the trial court granted the defendant's motion for reconsideration of its ruling, vacated that ruling and scheduled an evidentiary hearing on the state's closure motion. At the hearing, the state presented testimony from two physicians, who, after examining the witnesses, testified that an open courtroom would inhibit

---

[5] The sixth amendment to the United States constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

Article first, § 8, of the Connecticut constitution provides in pertinent part: "In all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial . . . ."

M's and C's testimony. After the hearing, the trial court again granted the state's motion for closure and fully set forth his findings on the record.

It is apparent from the record that in this case the defendant was fully aware of his right to an interlocutory appeal of this ruling and waived that right. Both prior to and after the trial court's original and final ruling on the closure motion, the court made explicit reference to the defendant's right to an expedited appeal. The defendant did not take advantage of his statutory right to immediate review of this ruling, and there is no reason stated on the record as to why he did not appeal at that time.

General Statutes § 51-164x provides in pertinent part that "[a]ny person affected by a court order which prohibits any person from attending any session of the court . . . shall have the right to appeal such order by filing a petition for review with the appellate court within seventy-two hours from the issuance of the order." "This statutory right to an expedited review of a closure order provides immediate protection of a defendant's right to a public trial." *State* v. *Kelly,* 208 Conn. 365, 371, 545 A.2d 1048 (1988). Where the record does not disclose "any justifiable reason for the defendant's failure to pursue the statutory remedy of expedited appeal, we . . . ordinarily decline to review [a] claim that the trial court erred in ordering closure. 'A statute which provides that a thing shall be done in a certain way carries with it an implied prohibition against doing that thing in any other way.' *State ex rel. Barlow* v. *Kaminsky,* 144 Conn. 612, 620, 136 A.2d 792 (1957)." *State* v. *Kelly,* supra, 371.

The defendant concedes that he did not seek an expedited appeal of this issue as authorized by General

Statutes § 51-164x[6] and Practice Book § 895,[7] but claims that because this issue involves a question of constitutional dimension, he is entitled to review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). In ·

[6] "[General Statutes] § 51-164x. APPEAL OF ORDER PROHIBITING ATTENDANCE AT COURT SESSION. (a) Any person affected by a court order which prohibits any person from attending any session of court, except any session of court conducted pursuant to section 46b-11, 46b-49, 46b-122 or 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, whether at a pretrial or trial stage, shall have the right to appeal such order by filing a petition for review with the appellate court within seventy-two hours from the issuance of such court order.

"(b) No such order shall be effective until seventy-two hours after it has been issued, and the filing of any petition for review shall stay the order.

"(c) The appellate court shall provide an expedited hearing on such petition in accordance with such rules as the judges of the appellate court may adopt, consistent with the rights of the petitioner and the parties to the case."

[7] "[Practice Book] § 895. [CONTROL OF JUDICIAL PROCEEDINGS]—EXCLUSION OF THE PUBLIC (a) Upon motion of the prosecuting authority or of the defendant, or upon his own motion, the judicial authority may, when constitutionally permissible, order that the public, which may include the news media, be excluded from any portion of a proceeding when there is a substantial likelihood that the presence of the public, including the news media, would unduly inhibit any testimony, or endanger the safety of any witness, or interfere with the defendant's right to a fair trial or when exclusion is required by statute. In jury trials, the probability of publication of the evidence or of any argument adduced at a hearing outside the presence of the jury shall be a sufficient reason for excluding the public, including the news media, from that portion of the trial, upon the ground of interference with the right to a fair trial. The time and date of any such order shall be entered by the court clerk in the court file together with such order. With the exception of orders concerning any session of court conducted pursuant to Gen. Stat. §§ 46b-11, 46b-49, 46b-122, 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, no order shall be effective until seventy-two hours after it has been issued.

"(b) With the exception of orders concerning any session of court conducted pursuant to Gen. Stat. §§ 46b-11, 46b-49, 46b-122, 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, any person affected by a court order issued pursuant to paragraph (a) shall have the right to appeal the order within seventy-two hours of its issuance by filing a petition for review with the appellate court pursuant to the appellate court rules. (See Gen. Stat. § 51-164x.)"

support of his claim that this issue is reviewable, the defendant relies on *State* v. *Kelly,* supra, in which our Supreme Court found a similar claim reviewable under *Evans.* [8]

To determine whether a claim merits review under the *Evans* doctrine, we " 'must ask a series of questions . . . and answer each in the affirmative before continuing to the succeeding question.' *State* v. *Newton,* [8 Conn. App. 528, 531, 513 A.2d 528 (1986)]. 'The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review.' Id.

"First, does the defendant raise an issue which, by its terms, implicates a fundamental constitutional right? This question looks solely to whether the label which the defendant places on the claim is constitutional in nature.

"Second, is the defendant's constitutional claim adequately supported by the record? This question requires that we review the record in a *limited* way and determine, on the basis of that limited review, whether the defendant's claim is truly of constitutional proportions or is simply characterized as such by the defendant. In those instances in which our Supreme Court or this court has already clearly indicated that the particular claim is or is not of constitutional proportions and therefore reviewable or not reviewable, a summary 'yes' or 'no' answer may be sufficient.

[8] Because the Supreme Court analyzed the issue of the reviewability of a waiver of the statutory right to an expedited appeal under the *Evans* doctrine, we are compelled to do the same. Subsequent to *State* v. *Kelly,* 208 Conn. 365, 371, 545 A.2d 1048 (1988), however, the Supreme Court adopted this court's approach to reviewing *Evans* claims. *State* v. *Bailey,* 209 Conn. 322, 329–30 n.4, 551 A.2d 1206 (1988).

We also note that in *State* v. *Smith,* 209 Conn. 423, 425 n.3, 551 A.2d 742 (1988), the Supreme Court alluded to whether "the ruling in *Evans* continues to serve the limited purpose for which it was intended."

"Third, 'was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant?' *State* v. *Newton,* supra. This question requires that we *fully* review the defendant's claim to determine whether a fundamental constitutional right of his was violated.

"Fourth, 'did the deprivation deny the defendant a fair trial, thereby requiring' that his conviction be set aside? Id. This question requires that we determine, under appropriate standards of harmless error or other similar doctrines, whether the error requires reversal." *State* v. *Thurman,* 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987); see also *State* v. *Bailey,* 209 Conn. 322, 329–30 n.4, 551 A.2d 1206 (1988); *State* v. *Huff,* 10 Conn. App. 330, 334, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

The first and second requirements under the above-stated test are readily met. *State* v. *Kelly,* supra, 371; *State* v. *Sheppard,* 182 Conn. 412, 415, 438 A.2d 125 (1980). Applying the third step in the analysis, however, we have reviewed the record and the defendant's claim and conclude that the defendant was not deprived of a constitutional right.

We reach this result based on a number of considerations. While the right to an open judicial process serves an important public interest, "[l]ike other important constitutional rights, the right to a public trial 'is not a limitless imperative.' " *State* v. *Sheppard,* supra, 415, quoting *Aaron* v. *Capps,* 507 F.2d 685, 687 (5th Cir. 1975). " 'The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether

the closure order was properly entered.' *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984). 'Under *Press-Enterprise,* the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.' *Waller* v. *Georgia,* 467 U.S. 39, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)." *State* v. *Kelly,* supra, 372. Therefore, the standard for closure requires the trial court to follow a number of procedural prerequisites prior to closure.

The present case is distinguishable from *State* v. *Kelly,* supra. In *Kelly,* the Supreme Court found that the trial court made *no* findings as required by *Waller* v. *Georgia,* supra, and during the pendency of the trial in *Kelly,* the complainant participated in an interview with a local newspaper, in which she discussed the subject matter of her testimony which was included in the closure order. Our review of the record in this case, in contrast to *Kelly,* reveals that the trial court followed all the proper procedural requirements. As required, it held an evidentiary hearing, and made the requisite findings on the record. In addition, the trial court's order was narrowly fashioned to respond to the need for closure, in that the courtroom was closed only during the testimony of the two minor victims. Therefore, on this record, it is evident that in exercising its discretion, the trial court followed all necessary procedural requirements and gave this issue the reasoned scrutiny required.

This case is also distinguishable from *State* v. *Kelly,* supra, in that it is clear from this record that the defendant made a considered and knowing waiver of his right to an expedited appeal. The following discus-

sions took place on the record, and clearly disclose the defendant's knowledge of this right. With respect to the trial court's original ruling on the motion for closure, it calculated, on the record, the seventy-hour period during which the proceedings would be stayed. In his request for reconsideration of this ruling, the defendant asked that the motion be heard immediately in light of the fact that "the appeal time is running." During the evidentiary hearing, the trial court mentioned the fact that if it granted the motion, a stay would go immediately into effect. At the close of the second hearing, the trial court again calculated on the record the stay period and commented that "any appeal pursuant to the appropriate sections of the practice book or statute should be filed at that time." The court then asked the court monitor to use her best efforts to make the transcripts of the hearing available for the defendant to appeal. At the close of the hearing, defense counsel indicated that he would let the state's attorney know whether the defendant intended to file an appeal because "he had to consult with [his] clients." The defendant did not appeal, and the record does not indicate why the defendant failed to pursue this right. It is clear on this record that the defendant was fully aware of his right to an expedited appeal, that the trial court made every effort to inform the defendant of this right, that the trial court instituted the necessary seventy-two hour stay of the proceedings, and that during the stay, the defendant did not appeal. On this record, it is evident that the defendant made an explicit waiver of his right to appeal, and did not view this waiver as prejudicial to his case. Having waived his right to immediate protection of his right to a public trial, the defendant cannot now claim a deprivation of that right.

*Evans* review is a rule of "principled appellate discretion designed to apply '[only] in [the] most excep-

tional circumstances. . . .' *State* v. *Evans,* [supra, 69]. It is designed to apply in such circumstances where, even in the absence of the defendant's having raised the issue in the trial court, 'the record adequately supports [his] claim that [he] has *clearly* been deprived of a fundamental constitutional right *and a fair trial.'* (Emphasis added.) Id., 70. It is . . . a rule aimed at preserving the fundamental integrity of the adjudicative process and avoiding fundamental injustice, and not at simply detecting error, even of a constitutional nature.

"It is not designed to protect defendants or their counsel who, 'through neglect, inattention or as a trial strategy refrain from making proper objection or raising in the trial court any available constitutional defenses, confident that if the outcome of the trial proves unsatisfactory without making objections and taking exceptions and raising any available constitutional issue they may still prevail by assigning error or raising the constitutional issue for the first time on appeal.' *State* v. *Evans,* supra, 67. Thus, the *'Evans* trial court bypass to this court is a narrow constitutional path and not the appellate Champs Elysees.' *State* v. *Gooch,* 186 Conn. 17, 18, 438 A.2d 867 (1982). . . ." *State* v. *Cosby,* 6 Conn. App. 164, 172–74, 504 A.2d 1071 (1986).

"It is rare that a claim which the defendant did not think important enough to raise at trial will require reversal of his conviction." *State* v. *Cosby,* supra, 173. The defendant's silence at trial is a "powerful signal that, because of the posture of the case, he did not hear the defect in the harmful manner which he presses on appeal, or even if he did so hear it, he did not deem it harmful enough to press in the trial court." *State* v. *Huff,* supra, 338.

There is error in part and the case involving crimes allegedly committed against M (Superior Court docket no. 51987) is remanded for proceedings consistent with this opinion.

In this opinion the other judges concurred.