## IN RE CHRISTOPHER G.*
(6596)

SPALLONE, O'CONNELL and FOTI, Js.

Argued March 16—decision released September 26, 1989

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Richard Emanuel,* for the appellant (defendant).

*Carolyn K. Longstreth,* deputy assistant state's attorney, with whom were *Warren Maxwell,* assistant state's attorney, and, on the brief, *Susan C. Marks,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment adjudicating him to be a youthful offender pursuant to General Statutes § 54-76b[1] by reason of having committed the crimes of sexual assault in the first degree; General Statutes § 53a-70 (a); assault in the third degree; General Statutes § 53a-61 (a) (1); and criminal mischief in the third degree. General Statutes § 53a-117a. The defendant claims that the trial court erred (1) in requiring him to commence his defense prior to the completion of the state's case-in-chief, and (2) in denying him access to certain psychiatric records of the victim. We find no error.

The trial court could reasonably have found the following facts. At the time of the assault, the complainant was a sixteen year old high school student who resided in West Hartford with her parents. The defendant

---

[1] "[General Statutes] Sec. 54-76b. YOUTHFUL OFFENDERS: DEFINITIONS. For the purpose of sections 54-76b to 54-76n, inclusive, 'youth' means a minor who has reached the age of sixteen years but has not reached the age of eighteen years; and 'youthful offender' means a youth who has committed a crime or crimes which are not class A felonies, who has not previously been convicted of a felony or been previously adjudged a youthful offender, or been afforded a pretrial program for accelerated rehabilitation under section 54-56e, and who is adjudged a youthful offender pursuant to the provisions of said sections. The interstate compact on juveniles, except the provisions of article four thereof, shall apply to youthful offenders to the same extent as to minors below sixteen years of age."

was also a high school student living in West Hartford with his parents. In November, 1986, a twenty-two year old neighbor was asked to stay with the complainant while her parents were away on a week long trip. On November 10, 1986, during her parents' absence, the complainant met the defendant. That evening, the complainant invited the defendant and his friends to her house and after a short visit, they left. During that week, she called the defendant at his home a few times.

On November 15, while her parents were still away, the complainant invited some of her friends to her house for a party. Sometime between 9 and 10 p.m., the complainant called the defendant at work and invited him to the party. The defendant arrived at approximately 11 p.m., and parked his car on the front lawn. At the defendant's request, the complainant accompanied him to the basement while the only other two remaining guests were upstairs. While in the laundry room, the defendant asked the complainant if it was true that she "wanted his body." The complainant did not respond initially but then said she wanted to go upstairs. When the defendant refused, the complainant asked him to leave. The defendant became angry and struck her on the right side of her forehead causing her to fall back onto the floor and hit her head. Consequently, she lost consciousness for a brief time. When she sat up, the defendant was on his knees with his pants unzipped and partially pulled down. He then forced her to perform an act of fellatio. The complainant did not call out for help, and, as a result of the act, gagged and vomited. The defendant repeated this act twice with the same result. The defendant then removed the complainant's pants and performed vaginal intercourse. The complainant did not resist but testified: "I was in shock. It never occurred to me to do anything. I was so scared I just sat there."

After one of the teenagers shouted that the adult neighbor had returned home, the defendant got up and left the house. Later that night, the complainant saw that the front lawn was newly torn up by car tire tracks. That evening she told several friends, her neighbor's mother, and a doctor about the incident. The following Monday, she recited the events to her gynecologist. On November 24, 1986, she gave a written statement to the police.

I

The defendant's first claim on appeal is that the trial court's ruling that required him to proceed with his case prior to the completion of the state's case-in-chief violated his constitutional and procedural rights. Specifically, the defendant alleges that this action violated his rights to a fair trial, due process of law, effective assistance of counsel and his privilege against self-incrimination. U.S. Const., amends. V, VI, XIV; Conn. Const., art. I, § 8. The defendant also claims that this ruling violated Practice Book § 874.[2] Because there is no indication on the record that the defendant made these arguments at trial, we decline to review these claims.

---

[2] "[Practice Book] Sec. 874.—ORDER OF PARTIES PROCEEDING AT TRIAL. Unless the judicial authority for cause permits otherwise, the parties shall proceed with the trial in the following order:

"(1) The prosecuting authority shall present his case in chief.

"(2) The defendant may present a case in chief.

"(3) The prosecuting authority and the defendant may present rebuttal evidence in successive rebuttals, as required. The judicial authority for cause may permit a party to present evidence not of a rebuttal nature, and if the prosecuting authority is permitted to present further evidence in chief, the defendant may respond with further evidence in chief.

"(4) The prosecuting authority shall be entitled to make the opening and final closing arguments.

"(5) The defendant may make a single closing argument following the opening argument of the prosecuting authority."

The following facts are relevant to our decision not to review this issue. On the first day of trial, the defendant moved for disclosure of the complainant's mental health records. Action on the motion was postponed in order to allow the defendant to subpoena Nancy Lathrop, the complainant's psychiatrist, and any mental health records she might possess concerning her treatment of the complainant. In the meantime, by agreement of the parties, the state proceeded with its case-in-chief and the defendant postponed his cross-examination of the state's witnesses, where necessary, pending the court's ruling on his motion for disclosure.

On Tuesday, the next court date, the trial court commenced its voir dire of Lathrop, but did not complete its questioning and requested that Lathrop return the next day. Due to scheduling conflicts, Lathrop could not return until the following Thursday. The parties agreed to postpone the completion of the court's voir dire until Thursday and the state continued with its case in accordance with the prior arrangement. The court expressed its desire to proceed as efficiently as possible in order to avoid "prolonging the agony" of the trial for the complainant, the defendant and both families.

The next day, before the completion of Lathrop's testimony and the court's ruling on the defendant's motion, the state indicated that it had no additional witnesses to present. When asked if he had completed his case-in-chief, the assistant state's attorney responded that he would not rest his case until he had an opportunity to question the complainant on redirect examination. The court then asked the defendant's counsel if he was ready to proceed with his case. Without specifying any grounds, the defendant's counsel objected to commencing his case before the state rested. In response to the objection, the court stated: "Let me just indicate to you I have explained to you the reasons I think, *in chambers,* why we would pro-

ceed in this fashion. And it does not appear that your client's rights will be prejudiced in any way. And, accordingly, I will ask you to call your next witness." (Emphasis added.) Defense counsel excepted to this ruling but did not seek to have the chambers discussion placed on the record. The defendant then took the stand and his testimony completed the proceedings for that day.

The following day, the trial court completed its voir dire of Lathrop and denied the defendant's motion for disclosure of the complainant's psychiatric records. The state then rested. The defendant moved for a judgment of acquittal, which the court denied, called his second and final witness, recalled the victim for further cross-examination, and then rested his case-in-chief.

The defendant acknowledges that trial courts have traditionally been accorded wide discretion in regulating the order of proof at trial; Practice Book § 874; *State* v. *Allen,* 205 Conn. 370, 380, 533 A.2d 559 (1987); but argues that the court abused its discretion in this case. In particular, the defendant maintains that the variation in the order of proof was erroneous for the following reasons: (1) neither party requested it; (2) expediency is an insufficient reason; (3) he was denied his right to present an orderly defense; (4) his decisions to testify on his own behalf and to present a defense were violated; and (5) he was prevented from obtaining a fair adjudication of his motion for judgment of acquittal.

Although the defendant excepted to the trial court's ruling requiring him to proceed with his case prior to the completion of the state's case-in-chief, he failed to place on the record any of the five grounds for his objection that he now seeks to have reviewed on appeal. On appeal, we are not bound to consider claims that are not "distinctly raised" at trial. Practice Book § 4185;

*State* v. *Lonergan,* 16 Conn. App. 358, 362, 548 A.2d 718 (1988), cert. granted on other grounds, 210 Conn. 812, 556 A.2d 611 (1989). In raising claims of error on appeal, parties are limited to arguing the authority and grounds for objections that were presented at trial. *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982). "The purpose of the rule requiring that an exception be taken that distinctly states the objection and the grounds therefor is to alert the court to any claims of error while there is still an opportunity for correction." *State* v. *Utz,* 201 Conn. 190, 207, 513, A.2d 1191 (1986).

It is apparent that a discussion of the defendant's objection occurred in the trial court's chambers. We are unable to decipher, however, from the scant discussion of this matter on the record what grounds, if any, the defendant advanced at trial in opposition to going forward with his case. Consequently, without such a discussion appearing on the record, it is impossible to review any possible prejudice this discretionary ruling may have had on the defendant's case without resorting to speculation. "We can decide the merits of an appeal only on the record presented. . . . [W]e cannot resort to matters extraneous to the record. . . . While a true picture may not be presented here because of a conversation that took place in chambers, the case, nevertheless, must be decided on the record." (Citations omitted.) *Hasbrouck* v. *Hasbrouck,* 195 Conn. 558, 560, 489 A.2d 1022 (1985); see also *Eamiello* v. *Piscitelli,* 133 Conn. 360, 363, 51 A.2d 912 (1947).

In making his objection, the defendant did not state his reasons, request the court to place the chambers discussion on the record, or attempt to clarify this deficiency in the record by utilizing the rectification procedure set forth in our rules of practice. Practice Book § 4051. It is the appellant's duty to present this court with an adequate record for review. Practice Book

§ 4061. The defendant having failed to present us with the basis for his objection to the alteration of the trial order, we are unable to review his claim on appeal.

## II

The defendant's next claim is that the trial court violated his state and federal constitutional rights by denying his motion for disclosure of certain portions of the complainant's psychiatric records.[3] We have reviewed the records in this case and find that the trial court properly denied the defendant's motion.

The following facts are relevant to this issue. In order to determine the existence of psychiatric records, the court conducted a voir dire of the victim's father. According to her father, between February and May, 1987, she and her parents visited a psychiatrist for family counseling because the victim was having difficulty growing up and the family was experiencing parent-child conflicts. After receiving permission from the victim's father, her guardian ad litem, and absent any objection by either party, the court conducted an in camera review of the psychiatric records. After the in camera inspection, and with the benefit of those records before it, the court conducted a voir dire of Lathrop, the family's counselor.[4] Lathrop's testimony revealed the existence of a doctor-patient relationship with the complainant and her parents. Lathrop testified that the only time that she and the complainant had discussed the assault was at their first session, and

---

[3] Specifically, the defendant argues that the trial court's denial of his motion for disclosure violated his rights to due process, to confront and cross-examine adverse witnesses, compulsory process, and to present a defense. U.S. Const., amends. V, VI, XIV; Conn. Const., art. I, § 8.

[4] We note that the voir dire was not limited merely to discovering whether there were any admissible "unrecorded communications"; *State* v. *Pierson,* 201 Conn. 211, 228, 514 A.2d 724 (1986); but also included all written notes of the sessions. The parties were allowed to participate fully in the questioning of the witness.

that that discussion was reflected in her notes transcribed after that first session. The complainant's father then waived the privilege as to that portion of the records relating only to the assault, and the court disclosed that information to the defendant. Lathrop further testified that the majority of the other sessions involved discussions of parent-child conflicts, including the complainant's truthfulness with her parents. Lathrop opined that the complainant was not suffering from any mental, emotional, or psychiatric condition that substantially affected her ability accurately to observe, recall or relate events either on November 15, 1986, or at the time of the trial. As to the remaining written records, Lathrop indicated that they did not concern the incident in question, nor did they reflect any mental condition that would affect the complainant's testimonial capacity.

During defense counsel's questioning regarding the remaining notes, Lathrop testified that the complainant had discussed a fantasy that was not specifically sexual, was common among young women, and did not affect her ability to recall and communicate events. Lathrop indicated that she did not know whether this fantasy occurred before or after the assault but that in her opinion, such a dream would be a natural consequence of a sexual assault.[5]

---

[5] Our review of the record reveals that the so-called fantasy involved is a teenager's thoughts of what it would be like to be pregnant and have a child to care for. The record discloses nothing of a sexual nature connected with this fantasy. Although we are cognizant that information related to a witness' sexual fantasy is a basis for broad cross-examination in sexual assault cases; State v. Ouellette, 190 Conn. 84, 103, 459 A.2d 1005 (1983); the psychiatric testimony presented in this case revealed that the pregnancy fantasy had no sexual connotation. Furthermore, in cases in which sexual fantasies have been found to be relevant to the issue of credibility, the relevant inquiry was whether the witness could distinguish fact from fiction, that is, did the incident occur, and were the fantasies explicitly sexual or did they involve allegations of or failure to report other sexual assaults. See id.; State v. Pierson, 201 Conn. 211, 514 A.2d 724 (1986); People v.

The trial court inquired as to the existence of any unrecorded communications that might reflect a mental condition bearing on the complainant's ability to observe, recall and relate events either at trial, during the counseling sessions or at the time of the offense. The response was negative. The trial court denied the defendant's motion for disclosure as to the remaining written records, and sealed them for the purpose of appellate review.[6]

*Francis*, 5 Cal. App. 3d 414, 85 Cal. Rptr. 61 (1970). The issue here is not whether the incident actually occurred, but rather whether there was consent.

On this record, the only evidence that might possibly support the defendant's argument, that the complainant's thoughts of having a child are relevant to her credibility, was the opinion of Nancy Lathrop, the complainant's psychiatrist, that if the fantasy occurred before the assault, it would be relevant to the issue of consent. We are unpersuaded that Lathrop's hypothetical opinion as to the timing of the fantasy is sufficient to render erroneous the trial court's determination as to the relevance of this material. First, whether this evidence is admissible to impeach the victim, and relevant to the issue of consent, is a legal issue to be determined by the court. Lathrop's opinion on this issue is merely one aspect of the trial court's discretionary determination. Second, after learning that the fantasy might be relevant if it had occurred before the assault, the defendant did not attempt to question the victim through an offer of proof to determine when she first experienced this fantasy. Because we believe that the burden to place such information on the record is on the defendant, we are not prepared to overrule a trial court's discretionary determination on mere speculation as to the timing of a fantasy of questionable relevance.

After the trial court has conducted an in camera inspection, our threshold of review is limited to examining whether the trial court abused its discretion in failing to disclose the complainant's psychiatric records. *State* v. *Kelly*, 208 Conn. 365, 545 A.2d 1048 (1988); *State* v. *Storlazzi*, 191 Conn. 453, 464 A.2d 829 (1983). The record reveals sufficient facts from which the trial court could have determined that details as to the victim's fantasy were not relevant to impeach her credibility.

[6] Following the trial, the court unsealed the records and permitted the defendant to review them for the purpose of preparing his appeal. We note that this procedure is inappropriate and defeats the confidentiality requirements of General Statutes § 52-146e. The proper procedure is to seal any records that are privileged and not discoverable after ruling on the defendant's motion for disclosure. Those records should remain sealed through the completion of the appellate process for the purpose of review by an appellate court.

The defendant does not question the procedure[7] employed by the trial court in ruling on his motion, but rather alleges it erred in failing to release certain portions of those records. Given the critical importance of the complainant's credibility, particularly as to the one basic element in dispute—consent—the defendant argues that the trial court took an unduly restrictive view of the impeachment nature of Lathrop's notes. Consequently, the defendant maintains that the court improperly impeded his cross-examination of the complainant and his direct examination of Lathrop. We disagree.

The issue of the disclosure of a witness' private psychiatric history requires us to balance two competing interests, the defendant's right to confrontation and the witness' right to privacy.[8] *State* v. *Boutwell,* 18 Conn. App. 273, 276, 558 A.2d 244 (1989). The defendant's right to effective cross-examination is an essential one and shapes our "determination of whether the defendant gains access to material such as is involved here. . . . This does not mean . . . that any such records must be disclosed to the defendant simply because they relate to a key state's witness whose claimed lack of credibility is the foundation of the defense." *State* v. *Storlazzi,* 191 Conn. 453, 457–58, 464 A.2d 829 (1983).

"The *linchpin* of the determination of the defendant's access to the records is whether they sufficiently disclose material 'especially probative of the ability to "comprehend, know and correctly relate the truth" ';

---

[7] For a discussion of the procedural requirements that the defendant must meet in order to gain access to privileged information, see *State* v. *Pierson,* 201 Conn. 211, 514 A.2d 724 (1986); *State* v. *Esposito,* 192 Conn. 166, 471 A.2d 959 (1984); *State* v. *Boutwell,* 18 Conn. App. 273, 558 A.2d 244 (1989).

[8] General Statutes § 52-146e prohibits disclosure of certain confidential communications.

*United States* v. *Lindstrom,* 698 F.2d 1154, 1165–66 (11th Cir. 1983); so as to justify breach of their confidentiality . . . ." (Emphasis added.) *State* v. *Storlazzi,* supra, 459; *State* v. *Hufford,* 205 Conn. 386, 402, 533 A.2d 866 (1987). "Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." *State* v. *Storlazzi,* supra, 459. At this stage in the proceedings, when the trial court has reviewed the records in camera, access to the records "must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and weigh that value against the interest in confidentiality of the records." (Citation omitted.) Id.

We have carefully examined the challenged psychiatric records, and conclude that the trial court could reasonably have found that they contain no evidence that is probative of the victim's testimonial capacity or that is relevant to her impeachment. Accordingly, the trial court did not abuse its discretion in refusing to disclose the records to the defendant.

There is no error.

In this opinion SPALLONE, J., concurred.

O'CONNELL, J., dissenting. I do not agree with the holding of the majority pertaining to the nondisclosure of certain portions of the psychiatrist's records. The credibility of the sexual assault victim was crucial to the state's case because, as in many sexual assault cases, the victim was the only witness to the actual crime. *In re Robert H.,* 199 Conn. 693, 707, 509 A.2d 475 (1986). Where, as here, the conviction depends largely upon the testimony of a particular witness, evidence affecting that witness' credibility takes on a constitutional aspect because, if that witness is not

believed, a reasonable doubt of guilt has been created. *State* v. *Storlazzi,* 191 Conn. 453, 462, 464 A.2d 829 (1983); *State* v. *D'Ambrosio,* 14 Conn. App. 309, 316, 541 A.2d 880 (1988).

I agree with the majority that "[w]hether and to what extent access to [psychiatrist's] records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." *State* v. *Storlazzi,* supra, 459. The victim's right to privacy in her psychiatric records must be balanced against the defendant's right to defend himself. See *Davis* v. *Alaska,* 415 U.S. 308, 320, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Hufford,* 205 Conn. 386, 403, 533 A.2d 866 (1987); *State* v. *Boutwell,* 18 Conn. App. 273, 276, 558 A.2d 244 (1989). When these competing interests are weighed in this case, I feel the scales clearly tip in favor of the defendant.

During voir dire by the court; see *State* v. *Pierson,* 201 Conn. 211, 228, 514 A.2d 724 (1986); *State* v. *Saraceno,* 15 Conn. App. 222, 243–44, 545 A.2d 1116 (1988); the psychiatrist testified to the effect that the victim had discussed a fantasy with her that was not specifically sexual. Notwithstanding that the trial court had examined the psychiatrist's record in camera and knew the nature of the fantasy, the trial court denied disclosure of the portion of the psychiatrist's report referring to this fantasy and ordered the report sealed for our review on appeal.

An examination of this report discloses that the fantasy in question was a pregnancy fantasy. In view of the biological connection between *sex* and *pregnancy,* I find it difficult to grasp the rationale behind the trial court's failure to classify this as a sexual fantasy. Our Supreme Court recognizes that a " '[s]exual fantasy' is a basis for 'broad cross-examination' of the complainant in sex cases." *State* v. *Ouellette,* 190 Conn. 84,

103, 459 A.2d 1005 (1983). I feel the pregnancy fantasy constituted a sexual fantasy and the defendant was entitled to its disclosure.

The court based its disclosure denial of the fantasy not only on the psychiatrist's opinion that it was not of a sexual nature, but also because she did not know whether or not it existed on the date of the crime. In regard to this second ground of denial, the psychiatrist conceded that if it had existed at the time of the crime, it would definitely be relevant to the issue of whether the sexual activity at issue was consensual. Since the defendant was totally unaware of the existence of this fantasy, at any period of time, he was prevented from examining the victim to explore its possible existence at the time of the crime.

In addition, the undisclosed records also contained material pertaining to a suicide attempt by the victim as well as her lack of truthfulness with her parents. It is my opinion that both of these matters as well as the pregnancy fantasy should have been disclosed to the defendant in order for him to exercise fully his right of cross examination. See *State* v. *Storlazzi,* supra, 459 and n.4; *State* v. *Boutwell,* supra; *State* v. *Petterson,* 17 Conn. App. 174, 180, 551 A.2d 763 (1988); *State* v. *Saraceno,* supra, 245.

I conclude that the trial court should have ordered the disclosure of that portion of the psychiatrist's records that indicated (1) that the victim had had a pregnancy fantasy, (2) that she had attempted suicide about a year before the crime, and (3) that conflicts with her parents involved her truthfulness with them. Failure to make these disclosures violated the defendant's right to due process of law, his right to confront and cross-examine witnesses, his right of compulsory process, and his right to present a defense; U.S. Const., amends. V, VI, XIV; *Davis* v. *Alaska,* supra.

I would find error and remand the case for a new trial.