STATE OF CONNECTICUT *v.* DAVID PIERSON
(12504)

PETERS, C. J., SHEA, DANNEHY, CALLAHAN and STOUGHTON, JS.

212

Argued June 11—decision released August 26, 1986

*David S. Golub,* with whom, on the brief, was *Richard Blumenthal,* for the appellant (defendant).

*Harry Weller,* special assistant state's attorney, with whom were *James G. Clark,* deputy assistant state's attorney, and, on the brief, *Arnold Markle,* state's attorney, and *John T. Walkley,* deputy assistant state's attorney, for the appellee (state).

SHEA, J. After a jury trial, the defendant was convicted of sexual assault in the second degree in violation of General Statutes § 53a-71. In his appeal the defendant claims error (1) in the failure of the court to instruct the jury on the element of general intent to perform the physical acts that constitute the crime, and (2) in certain evidentiary rulings concerning the patient-psychiatrist privilege created by General Stat-

utes §§ 52-146d and 52-146e, claimed to have restricted both his cross-examination and direct examination of a psychiatric counselor-therapist who testified for the state. We conclude that additional proceedings are needed because of the failure of the trial court to conduct a voir dire of the witness to ascertain whether he had any information concerning the mental condition of the complainant, a thirteen year old boy, that would have been admissible to affect his credibility as a witness.

From the evidence at trial the jury could reasonably have found that the complainant, his mother and another woman occupied, as combined house sitters and tenants, the first floor portion of a home in Madison owned by the defendant. The defendant continued to occupy a separate upstairs bedroom on the premises, which he used only occasionally.

According to the testimony of the complainant, about 4 a.m. on November 6, 1982, the defendant entered the room on the first floor where the boy was sleeping and sexually assaulted him by committing fellatio. The defendant then brought the boy upstairs to his own bedroom where he again sexually assaulted the boy in a similar manner. About 4:30 a.m. the complainant returned to his own room where he fell asleep.

When the complainant awoke about 7:30 a.m. he told his mother, who slept in a separate bedroom on the first floor, about the incident, and she called the police. The boy repeated his account of the crime to the investigating police officer. Later that morning he was taken to a child therapist who, according to a statement in a hospital record, had begun to counsel him and his mother about one month before the incident in relation to "parent-child conflicts." After telling his therapist about the sexual assault, the complainant was taken to a hospital for an examination. He again related

his account of the crime, on this occasion to an emergency room physician and to a hospital social worker. At the trial the complainant's mother, the investigating police officer, the emergency room doctor, the hospital social worker and a schoolmate friend, all testified in varying detail about what the complainant had told them about the sexual assault incident.

## I

The defendant filed no request to charge on the criminal intent he claims to be required as an element of the offense of sexual assault in the second degree, nor did he except to the charge as given. Realizing that review of his claim would ordinarily be precluded by failure to raise the issue in the trial court; Practice Book §§ 854, 3063; the defendant invokes the exception for fundamental constitutional errors depriving a person of a fair trial that we recognized in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). He claims that, although no specific intent is expressly required by General Statutes § 53a-71[1] for sexual assault in the second degree, at least a jury instruction upon the general intent to do the proscribed acts that constitute the offense was constitutionally necessary. Despite the absence of any request or exception in the trial court, this court has treated as a claim reviewable under

---

[1] "[General Statutes] Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age, or (2) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual intercourse, or (3) physically helpless, or (4) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (5) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person.

"(b) Sexual assault in the second degree is a class C felony for which nine months of the sentence imposed may not be suspended or reduced by the court."

*Evans,* the failure to charge upon an essential element of a crime. *State* v. *Cobb,* 199 Conn. 322, 326, 507 A.2d 457 (1986); *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982); *State* v. *Griffin,* 175 Conn. 155, 162–63, 397 A.2d 89 (1978). The defendant claims that a general intent to do the prohibited act is an element of every crime and that a jury charge omitting any reference to general intent is fatally deficient. Such a claim qualifies for *Evans* review at least to determine whether any fundamental constitutional right of the defendant has been violated. *State* v. *Hinckley,* 198 Conn. 77, 86–87, 502 A.2d 388 (1985).

Section 53a-71 (a) provides that "[a] person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age . . . ." The term "sexual intercourse" is defined to include "fellatio." General Statutes § 53a-65 (2).[2] In charging the jury the trial court declared that the statute required proof of two elements: (1) that the defendant had engaged in sexual intercourse with the victim; and (2) that the victim was under fifteen years of age at the time of the offense. This instruction corresponded precisely with our statement of the elements of the offense in *State* v. *Arroyo,* 181 Conn. 426, 430, 435 A.2d 967 (1980). We have held that sexual assault in the first degree is a general intent crime with no element of specific intent. *State* v. *Rodgers,* 198 Conn. 53, 62, 502 A.2d 360 (1985); *State* v. *Johnson,* 185 Conn. 163, 176, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983). We have similarly

---

   [2] General Statutes § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse, or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. Its meaning is limited to persons not married to each other."

construed the portion of General Statutes § 53-21 that proscribes "acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being" not to require proof of a specific mental element. *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963); see *State* v. *Martin,* 189 Conn. 1, 12, 454 A.2d 256 (1983). Accordingly, we conclude, despite the defendant's suggestion to the contrary,[3] that the only intent required for a violation of § 53a-71 is a general intent to perform the acts that constitute the offense.

"To some extent . . . all crimes of affirmative action require something in the way of a mental element—at least an intention to make the bodily movement which constitutes the act which the crime requires." LaFave & Scott, Criminal Law (1972) § 28, p. 201. Such an intent, to perform certain acts proscribed by a statute, we have referred to as the general intent ordinarily required for crimes of commission rather than omission. *State* v. *Martin,* supra, 13; *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971). That the defendant intended to perform the physical acts that constitute the crime of sexual assault in the second degree in the manner proved by the evidence was implicitly a part of the state's burden of proof and, in

[3] In a footnote to his brief the defendant maintains that some of the definitions of "sexual intercourse" in General Statutes § 53a-65 (2), particularly the provision that "[p]enetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body," expose to prosecution such patently noncriminal acts as those performed by a physician in conducting a vaginal or rectal examination of a child. From this reductio ad absurdum he argues that a mental element, i.e., an intent to obtain sexual gratification from the act constituting intercourse as defined, is essential for a violation of General Statutes § 53a-71. In this case we need not consider whether General Statutes § 53a-18 (5) would protect a physician in the scenario posed by the defendant, as argued by the state, because the evidence indicates no circumstances that could reasonably be deemed to justify the acts the complainant testified the defendant performed on him. The defendant at trial never sought to justify the conduct alleged but contended that the complainant's account of the incident was wholly false.

that sense, an element of the crime. "At all events, it is clear that criminal liability requires that the activity in question be voluntary." LaFave & Scott, supra, § 25, p. 180; see Model Penal Code § 2.01 (1).

Our acknowledgement of the fundamental principle that a criminal act must be volitional does not mean that a charge to a jury that omits reference to this principle is constitutionally defective where the evidence at trial contains no suggestion that the defendant's conduct was involuntary and he has made no such claim either in the trial court or on appeal. The defendant has produced no authority in support of the novel proposition he advances and we have discovered none. There are some basic aspects of criminal liability that may be presumed and thus need not be discussed in a charge to the jury, at least in the absence of a request or some evidence casting doubt upon the presumption. Sanity of a defendant, an essential requirement for criminality, even before the advent of the 1983 amendment to General Statutes § 53a-13 making insanity an affirmative defense; Public Acts 1983, No. 83-486; never became an issue upon which jury instructions were required until evidence that the defendant may have lacked the requisite mental capacity came into the case. *State* v. *Rodgers,* supra, 56. Duress and entrapment are recognized defenses to criminal charges because they also implicate the volitional aspect of criminality. General Statutes §§ 53a-14, 53a-15. Though the state bears the burden of disproving these defenses, once they are raised by the presentation of some evidence supporting them, there is no requirement that evidence negating them be produced as part of the state's prima facie case. A fortiori there is no requirement that a court suo motu instruct a jury upon these defenses in cases where the evidence produced by both parties contains not the remotest hint of their applicability.

The defense of the absence of a general intent to do a criminal act may be treated similarly. Until something in the evidence indicates the contrary, the court may presume the defendant intended the prohibited bodily movements that constitute the offense and that he has acted under no duress, unlawful inducement in the nature of entrapment, or lack of requisite mental capacity. Accordingly, we reject the defendant's claim that in this case the failure of the court to instruct the jury upon the general intent requirement was constitutional error or, indeed, error at all.

## II

The defendant claims that the trial court erroneously applied the patient-psychiatrist privilege created by General Statutes §§ 52-146d and 52-146e[4] to restrict his cross-examination and also his direct examination

[4] "[General Statutes] Sec. 52-146d. (Formerly Sec. 52-146a). PRIVILEGED COMMUNICATIONS BETWEEN PSYCHIATRIST AND PATIENT. DEFINITIONS. As used in sections 52-146c to 52-146i, inclusive:

"(1) 'Authorized representative' means (A) a person empowered by a patient to assert the confidentiality of communications or records which are privileged under sections 52-146c to 52-146i, inclusive, or (B) if a patient is deceased, his personal representative or next of kin, or (C) if a patient is incompetent to assert or waive his privileges hereunder, (i) a guardian or conservator who has been or is appointed to act for the patient, or (ii) for the purpose of maintaining confidentiality until a guardian or conservator is appointed, the patient's nearest relative;

"(2) 'Communications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist, or between a member of the patient's family and a psychiatrist, or between any of such persons and a person participating under the supervision of a psychiatrist in the accomplishment of the objectives of diagnosis and treatment, wherever made, including communications and records which occur in or are prepared at a mental health facility;

"(3) 'Consent' means consent given in writing by the patient or his authorized representative;

"(4) 'Identifiable' and 'identify a patient' refer to communications and records which contain (A) names or other descriptive data from which a person acquainted with the patient might reasonably recognize the patient

of a witness the state had called to prove "constancy of accusation."

It is important in our analysis of this claim of error to detail the setting in which the statutory privilege was exercised. The defendant had served a subpoena duces tecum upon Jonathan Swift, the counselor-therapist who had treated the complainant, and, before the start of trial, sought to examine the records pertaining to the complainant that Swift had brought to court in response to the subpoena. Swift testified at the hearing upon his motion to quash the subpoena, which the

as the person referred to, or (B) codes or numbers which are in general use outside of the mental health facility which prepared the communications and records;

"(5) 'Mental health facility' includes any hospital, clinic, ward, psychiatrist's office or other facility, public or private, which provides inpatient or outpatient service, in whole or in part, relating to the diagnosis or treatment of a patient's mental condition;

"(6) 'Patient' means a person who communicates with or is treated by a psychiatrist in diagnosis or treatment;

"(7) 'Psychiatrist' means a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry, or a person reasonably believed by the patient to be so qualified."

"[General Statutes] Sec. 52-146e. DISCLOSURE OF COMMUNICATIONS. (a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal."

court denied, that he was employed as a counselor at a family counseling center under the supervision of a child psychiatrist. He also testified that he had brought with him the records of his consultations with the complainant and his mother. The court, apparently without objection by anyone,[5] made an in camera inspection of these records.

After inspecting the records, the court reported that "no inconsistencies" had been found and that there were only two entries relating to the complainant, one dated December 1, 1982, and another dated January 1, 1983, the latter referring to the sexual abuse incident of November 6, 1982, when Swift had been consulted by the complainant and his mother. Swift testified outside the presence of the jury that he had made no contemporaneous notes of that conference because the policy of the counseling center was to make notations only at the beginning of each month regarding the sessions for the previous month.[6] He also said that he had consulted with the complainant alone or in the presence of his mother on seven occasions from October 28, 1982, to December 7, 1982.

Before Swift began his testimony before the jury, the state declared that it would use him only for the purpose of showing constancy of accusation. The defendant, however, had also subpoenaed the witness and intended to go beyond the normal scope of cross-examination by presenting him as a witness for the defense. In order to avoid the necessity of excusing and then recalling Swift to the witness stand, the court, without objection, determined that the defendant could

[5] At this hearing the victim and his mother were represented by counsel in connection with the disclosure of their psychiatric counseling records. The witness, Jonathan Swift, was represented by counsel at this hearing and also when he testified at trial.

[6] The notation dated January 1, 1983, concerning the sexual assault, which had occurred November 6, 1982, was apparently an exception to this policy.

both cross-examine the witness on the testimony elicited by the state and question him on direct examination after the state had presented his testimony. The court, however, rejected the defendant's claim that the patient-psychiatrist privilege would be waived entirely once Swift testified about his interview with the victim and his mother on November 6, 1982, the date of the sexual assault. The court ruled that the privilege would not be applicable to inquiries relating to constancy of accusation but would remain for other matters. The defendant excepted to this ruling.

On direct examination by the state, Swift testified that on November 6, 1982, after a telephone request for an appointment, the complainant and his mother came to his office where he spoke with them together. Though he had taken no notes, he was able to relate in considerable detail the boy's account of the sexual assault by the defendant.

On cross-examination, after exploring some discrepancies between the complainant's testimonial account of the incident and that given to the witness, the defendant inquired whether Swift had been treating the boy and his mother for "parent-child conflicts," as a notation in the hospital record[7] indicated. At this point Swift claimed the privilege and the jury was excused. After an extensive colloquy, in which Swift was represented by counsel, the court upheld the exercise of the privilege on the grounds that a response to the question of the purpose of the treatment would violate the privilege and that the inquiry was not related to constancy of accusation. The defendant, who argued that the privilege had been waived by virtue of the statement in the hospital record, presumably made by the complainant or his mother, concerning the purpose of

---

[7] This hospital record related to the examination made of the victim on November 6, 1982, the date of the sexual assault, after the victim had first consulted with Jonathan Swift, the therapist.

the consultations with Swift, excepted to the ruling. The cross-examination of Swift was then terminated without any further questions by the defendant.

No challenge has been made either in the trial court or on appeal to the ruling denying access to the psychiatric records relating to the consultations of the complainant and his mother with Swift, nor has appellate review been sought of the limited disclosure made by the court of pertinent information contained in those records. The defendant attacks only the court's ruling upholding Swift's exercise of the privilege in response to a question relating to the purpose of his consultations and the refusal to allow inquiry concerning the possibility that the complainant had been subject to sexual fantasies. He does not contest the applicability of the statutes creating the privilege[8] as precluding inquiry into the subject matter of the psychiatric therapy sessions with the complainant but claims (1) that the privilege was waived by the testimony of the boy, his mother and Swift about the consultation on the date of the offense, which the state introduced to show constancy of accusation, and (2) that, whether or not there was such a waiver, the constitutional right of a defendant to confront his accusers requires that the statutory privilege stand aside.

Although this court has indicated that a patient may waive the privilege against disclosure of conversations and records pertaining to psychiatric treatment, we have never held that such waiver may be implied merely from testimony at a trial concerning events relevant to proof of the crime. The testimony concerning the complainant's narrative to Swift concerning the sex-

---

[8] Although Swift was not a licensed psychiatrist, it was undisputed that he worked under the supervision of a psychiatrist and that, accordingly, communications and records relating to diagnosis or treatment of the mental condition of his patients qualified for the privilege created by General Statutes §§ 51-146d and 52-146e.

ual assault offense, which the trial court ruled was not privileged and was, therefore, properly subject to cross-examination, cannot be deemed to provide access to wholly separate communications related to treatment of the boy or his mother. "[W]aiver is the voluntary relinquishment of a known right." *Del Vecchio* v. *Del Vecchio,* 146 Conn. 188, 194, 148 A.2d 554 (1959). The trial record is barren of any indication that the complainant or his mother was aware that, as a consequence of testifying at the behest of the state, consent to access by the defendant to the entire series of their consultations with Swift would be implied. "Consent" is expressly required by subsection (a) of § 52-146e for disclosure of psychiatric communications or records and is defined in § 52-146d (3) to mean "consent given in writing by the patient or his authorized representative." Subsection (b) of § 52-146e requires that "[a]ny consent given to waive confidentiality shall specify to what person or what agency the information is to be disclosed and to what use it will be put." These statutory provisions preclude at least the implied waiver that the defendant contends arose from the testimony offered to prove constancy of accusation on the part of the complainant. Even in the absence of such legislative restrictions upon the principle of implied waiver, none of the authorities relied on by the defendant has gone so far as to declare that revelation by a witness of one conversation that would otherwise be privileged constitutes a waiver of other unrelated conversations with the same person. Accordingly, we reject the defendant's first contention, that the complainant and his mother waived the privilege by virtue of their testimony or the use of Swift's testimony concerning their discussion of the events constituting the crime during their conference on November 6, 1982.

We must finally address the remaining claim, that to allow the statutory privilege to bar inquiry for the

purpose of eliciting from Swift information possibly relating to the credibility of such a crucial prosecution witness as the complainant in this case violates the defendant's constitutional right of confrontation.[9] Although the defendant briefs this issue in terms of his right of cross-examination, the gist of his constitutional claim is that the exercise of the privilege prevented him from discovering whether the complainant in his therapy sessions with Swift had manifested any inclination toward sexual fantasy or other mental abnormality that might affect the credibility of his testimony. See *State* v. *Ouellette,* 190 Conn. 84, 103–104, 459 A.2d 1005 (1983). We can discern no flaw in the court's ruling that cross-examination of Swift should be limited to the subject matter of his direct examination, the complainant's narrative of the crime. "[I]nsofar as the cross-examination does not take the form of an attack on the credibility of the witness, it must be limited to the subject matter of the direct examination." *Mendez* v. *Dorman,* 151 Conn. 193, 198, 195 A.2d 561 (1963). The defendant does not contend that his cross-examination was in any manner restricted concerning either Swift's credibility or the account given to him of the sexual assault incident. Nor can it be maintained that the exercise of the privilege by Swift hampered the cross-examination of the complainant or his mother, who had been fully questioned without any attempt to probe their mental condition when they had testified earlier in the trial.

The ruling upholding Swift's invocation of the privilege, however, did prevent the defendant from learning through direct examination whether the complainant had shown during his contacts with Swift any mental

---

[9] The sixth amendment to our federal constitution provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Article first, § 8, of our state constitution contains a virtually identical provision.

abnormality that might have reflected upon the credibility of his accusation against the defendant. If such information had been discovered, absent the privilege, it would have been admissible to discredit the complainant's testimony. *Taborsky* v. *State,* 142 Conn. 619, 629, 116 A.2d 433 (1955).

This court has faced similar problems of attempting to reconcile the privilege with the right of confrontation in respect to disclosure of records of psychiatric treatment of a witness in a criminal case. *State* v. *Bruno,* 197 Conn. 326, 329–32, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986); *State* v. *Esposito,* 192 Conn. 166, 177–80, 471 A.2d 949 (1984); *State* v. *Storlazzi,* 191 Conn. 453, 455–63, 464 A.2d 829 (1983). In *State* v. *Storlazzi,* supra, an in camera inspection of the records had been made by the trial court, apparently without objection, as in this case, and we affirmed, after our own examination of these records, the denial of the defendant's request for access to them, because they did not "sufficiently disclose material especially probative of the victim's ability to know and correctly relate the truth so as to justify breaching their confidentiality in disclosing them to the defendant." Id., 460. In *State* v. *Esposito,* supra, where the trial court had refused to make an in camera examination of psychiatric records, we upheld the ruling upon the ground that, before the court should engage in that procedure, even with the consent of the witness, "there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken." Id., 179. In that case we found that there had been no "threshold showing that at any pertinent time [the witness] had a mental problem which affected her testimonial capacity in any respect, let alone to a sufficient degree to warrant fur-

ther inquiry." Id., 180. In *State* v. *Bruno,* supra, though we ultimately found harmless error, we concluded that the preliminary showing required by *Esposito* had been made adequately. We found some indication of the existence of mental abnormalities affecting testimonial capacity based upon testimony of the witness, elicited on cross-examination, "regarding her psychiatric treatment and hospitalizations, her alcoholism and drug use, her suicide attempts, and her feelings of fear and anger toward the defendant." Id., 332. We decided that, "absent any knowledge of the contents of her psychiatric records, it is impossible to determine whether they included relevant impeaching evidence that was not cumulative or was contrary to her testimony" and that "[t]o rely on the testimony actually elicited on cross-examination in assessing whether the defendant's sixth amendment rights were violated would involve pure speculation as to the contents of the witness' records." Id.

If we were to follow the requirement of *Esposito* for a "threshold showing that at any pertinent time [the complainant] had a mental problem which affected [his] testimonial capacity in any respect" it is doubtful that the evidence before us of consultations with a psychiatric therapist for "parent-child conflicts" or the somewhat bizarre narrative of the incident itself would be sufficient to require the court to engage in a review of the psychiatric records of the complainant. Such an examination of those records did take place, however, and the defendant has made no claim that any pertinent material contained therein was not disclosed to him. His claim is that he was prevented by the privilege from discovering whether Swift had information, other than that contained in the records previously reviewed by the court, of any mental aberrations of the complainant that might reflect upon his credibility. Without any opportunity to ascertain whether such

information exists, it would ordinarily be impossible for a defendant to lay the groundwork demanded by *Esposito* as preliminary to a fair judicial determination of the availability of evidence of the mental condition of a witness significantly related to his testimonial capacity or credibility.

The privilege cannot be permitted to bar the court from access to such information as is necessary to decide whether the occasion is one where the witness must waive the privilege or have his testimony expurgated from the case. See *State* v. *Esposito,* supra, 179–80. In the closely analogous context of the privilege created by General Statutes § 52-146k attending communications of a sexual assault victim to a rape crisis counselor, we have not insisted upon a determination that the confidential communications of the victim were inconsistent with his testimony at trial before an in camera review may be conducted by the court, with the victim's consent, of the record of those prior statements. *In re Robert H.,* 199 Conn. 693, 709–10, 509 A.2d 475 (1986). It was held in *Davis* v. *Alaska,* 415 U.S. 308, 320, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), that "[t]he State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." Similarly, the privilege created by § 52-146e for communications of a psychiatric patient must give way to the interest of a criminal defendant in determining whether there is substantial evidence of a mental condition of a vital witness for the prosecution that might reasonably affect the credibility of the witness. If the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness.

The procedure we established in *Esposito* and *Bruno* for permitting the trial court, with the consent of the witness, to review in camera the records of psychiatric treatment that are before the court must be modified if a defendant is to have the same protection of his constitutional right of confrontation in respect to unrecorded communications made confidential by § 52-146e. Where there is any reasonable basis in the evidence for believing that psychiatric personnel may have information relating to the mental condition of a witness that might affect his testimony, the court must conduct a voir dire of the person who may possess such information in order to discover whether it would be admissible. This preliminary inquiry may be conducted only with the consent of the witness sought to be impeached, but, unless such consent is forthcoming, the testimony of that witness must be stricken. The voir dire for the purpose of determining the existence of such impeaching evidence must be conducted in the courtroom in the presence of the defendant and his counsel, who shall be allowed to participate fully in the proceeding. The court may, however, exclude the public from the courtroom pursuant to Practice Book § 895. See *Press-Enterprise Co.* v. *Superior Court of California for the County of Riverside,* 478 U.S.    , 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986). If, after conducting such a voir dire, the court decides that some of the evidence elicited is admissible at trial, the defendant shall be permitted to use it, but the remaining confidential communications shall be sealed. If no admissible impeaching evidence is discovered, the entire record of the proceeding shall be sealed for possible appellate review.

In the case before us we conclude that the trial court, before upholding the exercise of the privilege, should have conducted a voir dire of Swift to ascertain whether he possessed information about the mental condition of the complainant that would have been admissible to

impeach his testimony. The error may be harmless, however, because it cannot be determined without a voir dire, which may be conducted only with the consent of the complainant, whether any such evidence exists. The case must be remanded for the purpose of conducting such a voir dire. In the event that the complainant refuses to consent to waive his statutory privilege for the purpose of such an inquiry, his testimony at the trial must be wholly stricken and, since he was the only witness to the crime, the defendant must be acquitted for insufficiency of the evidence. If the complainant does waive the privilege for this purpose and the court finds significant evidence that would be admissible for impeachment, a new trial must be granted. On the other hand, if no such evidence is discovered, the judgment of conviction must stand. See *In re Robert H.,* supra, 710–11.

There is error, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.