STATE OF CONNECTICUT *v.* JOSE ROSADO
(AC 17190)

Lavery, Landau and Hennessy, Js.

Argued September 18, 1998—officially released March 30, 1999

*Thomas B. Pursell*, special public defender, for the appellant (defendant).

*Bruce R. Lockwood*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Herbert E. Carlson, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Jose Rosado, appeals from the judgment of conviction, rendered after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a) and assault in the third degree in violation of General Statutes § 53a-61 (a) (1). The defendant was sentenced to twenty years imprisonment and this appeal followed.

On appeal, the defendant claims that the trial court improperly (1) denied his motions for disclosure of the victim's psychiatric records, (2) denied his April 9, 1992 pretrial motion for disclosure of the names of the victim's mental health care providers, (3) admitted into

evidence a letter as evidence of his consciousness of guilt and (4) denied his motion to dismiss defense counsel. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim and the defendant resided together for approximately nine years and separated in 1989. On the evening of May 15, 1991, the defendant visited the victim at her apartment in Hartford. The defendant and the victim talked for several hours, and, when the victim asked the defendant to leave her apartment, he refused. The defendant then forcibly dragged the victim into a bedroom and threw her onto a mattress. While the defendant was binding the victim's hands, she cried and begged him to stop. The defendant then raped the victim. He was arrested and subsequently convicted of the crimes charged. This appeal followed. Additional facts will be set forth where relevant to the issues on appeal.

I

The defendant first claims that the trial court improperly denied his motions for disclosure of the victim's psychiatric records. Specifically, the defendant contends that the trial court's failure to disclose this information violated his right to confrontation under the sixth amendment to the United States constitution[1] and article first, § 8, of our state constitution,[2] and his right

[1] The sixth amendment to the United States constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[2] Article first, § 8, of the constitution of Connecticut provides that: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process

to due process under the fourteenth amendment to the United States constitution[3] and article first, § 8, of our state constitution. Additionally, he asks this court to overrule our Supreme Court's decision in *State* v. *Harris*, 227 Conn. 751, 768–69, 631 A.2d 309 (1993). We are not persuaded by the defendant's claims.

Additional facts are necessary to a resolution of these claims. On April 9, 1992, the defendant filed a pretrial motion for disclosure, petitioning the trial court to order the state to provide him with information concerning the victim's psychiatric treatment. The defendant's request for disclosure was predicated on his claim that he had accompanied the victim to several mental health facilities during the course of their nine year relationship. Although the trial court did not order the state to disclose that information, it informed the state that, on the basis of the information provided by the defendant, the state was entitled to ask the victim whether she had received psychiatric treatment. With the state's assistance, the defendant ultimately subpoenaed the victim's records from four mental health facilities.[4] These records were sealed and turned over to the trial court.

to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[4] The defendant subpoenaed the victim's psychiatric records from United Services in Willamantic, Hartford Hospital, Norwich State Hospital and New Britain General Hospital.

On April 20, 1992, after the state had concluded its direct examination of the victim, the defendant petitioned the trial court for disclosure of the victim's psychiatric records so that he could use this information to establish that the victim's psychiatric condition affected her ability to observe, recall and narrate events at issue in the trial. The trial court denied the defendant's request and asked him to proceed with his cross-examination of the victim.[5]

Thereafter, outside the presence of the jury, the defendant attempted to prove that the victim's psychiatric records contained information that was probative of her ability to observe, recall and narrate relevant events and, therefore, disclosure of those records was warranted. After the defendant concluded his offer of proof, the trial court observed that the state "had complied with [the court's request for disclosure] and, as a result, the court has been furnished with reports from four different organizations." After the trial court considered the testimony of the defendant and the victim and reviewed in camera the victim's records from United Services and Hartford Hospital,[6] it denied the defendant access to the victim's records on the ground

---

[5] After having examined, with the victim's consent, her records from Hartford Hospital and United Services, the trial court stated: "I suggest perhaps continuing with cross-examination [because] in reading those two records the court would have to respond at this time that there is nothing inconsistent with the complaining witness' testimony or in the history that she had so far disclosed. So that—and there is, therefore, nothing that the court does not feel that the defendant himself does not know about the condition of the [victim], and that he has as much information as those two reports would warrant the defense in cross-examination of the [victim]. So, in effect, at this stage of the proceedings, I would—if you were to make a motion on the basis of the in camera reading of those two reports, I would deny it. That is why I suggest perhaps the best procedure is to proceed with cross-examination [of the victim]."

[6] Although the trial court had psychiatric records from four mental health facilities, when the defendant made his offer of proof on April 20, 1992, the victim had authorized in camera review of only the records from United Services and Hartford Hospital.

that they did not contain information relevant to the testimonial capacity of the victim.[7] The trial court also denied the defendant's request for an in camera review of the victim's records from Norwich State Hospital and New Britain General Hospital because he did not establish a sufficient foundation to warrant in camera review.

On June 11, 1992, the defendant renewed this claim in his motion for a new trial. In denying the defendant's motion, the trial court, having reviewed in camera the victim's psychiatric records from United Services, Hartford Hospital and Norwich State Hospital,[8] stated that "there was nothing in those records that would give the defense an opportunity to impeach her credibility or to test her ability to perceive, recollect or articulate."[9]

[7] The trial court stated: "[T]he court should bear in mind, in reviewing any records to determine whether or not the defendant should have confrontation by the disclosure of confidential records, whether or not there is anything in these records that the defense would find necessary for confrontation purposes. And I find that the records cover a greater period than from 1991 to today's date. I have observed the defendant on the stand, and I have read the records, and I have heard [the victim's] testimony concerning an event in 1991, and I can say, on the basis of the records and her testimony and the testimony of the defendant concerning that period of time, that he not only knew but brought her to and participated in giving a history [of the victim's mental health treatment] that predated 1991. And if we are considering what confrontation rights he would have as to the event of 1991 as to [the victim's] being competent, having memory and being articulate, that there is nothing in the records which would give [the defendant] additional confrontation."

[8] When the defendant petitioned the trial court to order disclosure of the victim's records on April 20, 1992, the victim had not yet authorized the court to review in camera her records from Norwich State Hospital and New Britain General Hospital. The record indicates, however, that when the defendant renewed that claim on June 11, 1992, the victim had authorized the trial court to review in camera her records from Norwich State Hospital. The trial court stated: "I think the one [the victim] did not grant was Norwich State Hospital. But then at a later time [the victim] granted the court permission to read the Norwich State Hospital report, because I do have a memory of reading it." The state concedes, however, that it is unclear whether the trial court later examined the victim's records from New Britain General Hospital.

[9] The trial court, having reviewed the victim's records, stated that "there was nothing in the records that would be of value to the defense in its

A

The defendant first claims that the trial court's failure to disclose the victim's psychiatric records violated his right to confrontation under the sixth amendment to the United States constitution and article first, § 8, of our state constitution. We disagree.[10]

The people of this state enjoy a broad privilege in the confidentiality of their psychiatric communications and records. See General Statutes §§ 52-146d and 52-146e. "A criminal defendant has a constitutional right to cross-examine state witnesses, however, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices

impeaching the credibility of the [victim], and there was nothing in the mental condition as outlined in the various reports which would have in the court's mind been, given the defendant an ability or opportunity to test [the victim's] ability to perceive, recollect or articulate. And the court in speaking to the complaining witness on the stand and listening to her testimony came to the conclusion that there was no defect, no apparent defect in the ability to perceive, recollect or articulate."

[10] The defendant also claims that the trial court's failure to disclose the victim's psychiatric records violated his due process rights under the fourteenth amendment to the United States constitution and article first, § 8, of our state constitution. We decline to review separately the defendant's due process claim because our Supreme Court's decision in *State* v. *D'Ambrosio*, 212 Conn. 50, 57 n.5, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990), establishes that this claim is subsumed by our analysis of the defendant's right to confrontation claim. In determining whether the trial court had improperly denied the defendant's request for an examination of the psychiatric records of a key state's witness, the court in *D'Ambrosio* stated that: "It is of no moment in this case whether a defendant's constitutional right to discredit witnesses by accessing their psychiatric records stems from the sixth amendment's confrontation clause; *Davis* v. *Alaska*, 415 U.S. 308, 315–16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); from the fourteenth amendment's due process clause, as proposed by four justices of the United States Supreme Court; *Pennsylvania* v. *Ritchie*, 480 U.S. 39, 56, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987); or from either the confrontation or due process clause of our state constitution. Conn. Const., art. I, § 8; see *State* v. *Hufford*, 205 Conn. 386, 401–402, 533 A.2d 866 (1987). We postpone deciding this question until we have a case in which it would make a difference or until the United States Supreme Court offers us further guidance."

or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. . . . Thus, in some instances, a patient's psychiatric privilege must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect the witness' credibility. . . . The defendant's right of cross-examination does not, however, allow him to discredit and impeach in whatever way, and to whatever extent, the defense might wish. . . . [Our Supreme Court has] therefore directed trial courts to engage in a specific procedure designed to accommodate this inherent tension." (Citations omitted; internal quotation marks omitted.) *State* v. *D'Ambrosio*, 212 Conn. 50, 55–57, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

"If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that there is a reasonable ground to believe that the failure to produce the records would likely impair his right to impeach the witness. *State* v. *Pierson*, [201 Conn. 211, 225, 514 A.2d 724 (1986), on appeal after remand, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989)]; *State* v. *Esposito*, 192 Conn. 166, 179, 471 A.2d 949 (1984)." (Internal quotation marks omitted.) *State* v. *Pratt*, 235 Conn. 595, 607, 669 A.2d 562 (1995). "If in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in camera inspection entitles the defendant to have the witness' testimony stricken." (Internal quotation marks omitted.) Id.

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the record for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. . . . Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused." (Internal quotation marks omitted.) *State* v. *Howard*, 221 Conn. 447, 457–58, 604 A.2d 1294 (1992).

1

On April 20, 1992, although the defendant did not satisfy the threshold requirement set forth in *State* v. *Esposito*, supra, 192 Conn. 179–80, the trial court nonetheless reviewed in camera, with the victim's consent, psychiatric records from United Services and Hartford Hospital.[11] The trial court denied the defendant's request for access to those records. On that same date, the trial court also denied the defendant's request for an in camera inspection of the victim's records from Norwich State Hospital, but later, with the victim's consent, it inspected those records. On June 11, 1992, the trial court denied the defendant's posttrial motion for access to the records. In light of the victim's testimony

---

[11] Since the trial court conducted an in camera inspection of those records with the consent of the victim and without objection by either the state or the defendant, the issue of whether the defendant made a threshold showing under *Esposito* is not before this court. See *State* v. *Pierson*, supra, 201 Conn. 226.

and the information that the defendant already possessed concerning the victim's psychiatric treatment, the trial court determined that disclosure of those records was unwarranted because they did not contain additional information that was especially probative of the victim's capacity to relate the truth or to observe, recollect and narrate relevant events. Having carefully examined the victim's records from United Services, Hartford Hospital and Norwich State Hospital in light of the appropriate standard of review; see *State* v. *Howard*, supra, 221 Conn. 458; we conclude that the trial court did not abuse its discretion by denying the defendant's request for access to those records.

2

On April 20, 1992, the trial court did not, however, review in camera the victim's psychiatric records from New Britain General Hospital because the victim withheld her consent and the trial court determined that the defendant did not establish a sufficient foundation to warrant in camera review. The state concedes that it is unclear whether the trial court later examined those records in camera. Because it is unclear from the trial record whether the court later examined the New Britain records in camera, we must determine whether the defendant satisfied the threshold requirement for an in camera inspection of the records. If the defendant failed to satisfy that threshold requirement, his claim that the trial court should have disclosed the records would be unavailing.

"It is well settled in this state that before a criminal defendant may obtain an in camera inspection of a witness' confidential records for purposes of impeachment, he or she must first demonstrate that 'there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony

should be stricken.' *State* v. *Esposito*, [supra, 192 Conn. 179]." *State* v. *Bruno*, 236 Conn. 514, 522–23, 673 A.2d 1117 (1996). "Where, as here, the witness' records are sought for the purpose of obtaining evidence of a mental condition bearing on the witness' testimonial capacity, we require the defendant . . . to adduce a factual basis from which the trial court may conclude that there is a reasonable ground to believe that the records will reveal that at any pertinent time [the witness' mental problem] affected his testimonial capacity to a sufficient degree to warrant further inquiry." (Internal quotation marks omitted.) Id., 523.

Our Supreme Court has "urged trial courts to permit the defendant a certain latitude in his attempt to make [the preliminary showing required to obtain an in camera inspection of confidential records] . . . ." (Citation omitted; internal quotation marks omitted.) Id., 531. "While we are mindful that the defendant's task to lay a foundation as to the likely relevance of records to which he is not privy is not any easy one, we are also mindful of the witness' legitimate interest in maintaining, to the extent possible, the privacy of her confidential records." Id., 531–32.

After a careful review of the trial record, we conclude that the defendant failed to satisfy the threshold requirement for an in camera inspection of the psychiatric records from New Britain General Hospital. Specifically, he failed to establish a sufficient foundation from which the trial court must necessarily have concluded that there was a reasonable ground to believe that the records from New Britain General Hospital would yield evidence useful to his impeachment of the victim. See id., 528. Our decision is based on (1) the information the state and defendant provided to the trial court concerning the age of these records, (2) the results of the trial court's in camera inspection of the victim's more recent records from United Services and Hartford Hospital and

(3) the results of the trial court's in camera review of the victim's records from Norwich State Hospital.

First, "under our case law, there are two points at which a witness' possible mental unsoundness is relevant: *at or around the time of trial or of the incident about which he is to testify.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Herring*, 210 Conn. 78, 109, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989); see also *State* v. *Kelly*, 208 Conn. 365, 379–80, 545 A.2d 1048 (1988). In *State* v. *Burak*, 201 Conn. 517, 523, 518 A.2d 639 (1986), the defendant petitioned the trial court for review of a key witness' privileged psychiatric records. During his offer of proof, the defendant offered evidence that the witness had received psychiatric treatment from approximately 1974 to 1975. Id., 521. The crime occurred in 1979 and the trial took place sometime thereafter. Our Supreme Court held: "[T]he defendant did not make the necessary preliminary showing that failure to produce the records was likely to impair his confrontation rights. . . . No showing was made that the witness had a mental problem which affected his testimonial capacity at the time of the occurrence of the events in this case or at the time of the trial. . . . The only facts revealed during the defendant's offer of proof on this issue were that the witness had received treatment from approximately 1974 to 1975. . . . This testimony did not indicate any inability on the part of the witness to recall or recount the events relating to the circumstances of [the victim's] death [in 1979]. . . . The defendant would apparently have us hold that the records of anyone who has ever received psychiatric treatment, for whatever purpose, are fair game for disclosure; this we decline to do." (Citations omitted.) Id., 524–25.

In the present case, the crime occurred in 1991 and the trial took place in 1992. The state informed the

trial court that, on the basis of information that it had obtained from the victim, the records from New Britain General Hospital dated from approximately the late 1970s. Although the defendant testified that the victim received treatment at this facility sometime during the course of his nine year relationship with her, which ended in 1989, he did not provide any specific information concerning the dates of her treatment. Moreover, there was no evidence that the records were contemporaneous with the date of the crime or trial. In the absence of any evidence that the records were contemporaneous with the date of the crime or trial, the decision in *Burak* establishes that an in camera inspection was not warranted.

Second, our conclusion derives additional support from the results of the trial court's inspection of more recent psychiatric records from Hartford Hospital and United Services. The victim received psychiatric treatment at United Services between 1989 and 1992, and at Hartford Hospital between 1988 and 1992. Those records were contemporaneous with the crime, which occurred in 1991, and the trial, which took place in 1992. After having reviewed the victim's records from United Services and Hartford Hospital, the trial court found that neither record contained additional information especially probative of the victim's ability to observe, narrate and recall events at issue in the trial. If the contemporaneous records did not contain probative information, it is unlikely that the victim's older psychiatric records from New Britain General Hospital contained additional, probative information.

Finally, our conclusion also derives support from the results of the trial court's in camera inspection of the victim's records from Norwich State Hospital. Sometime after April 20, 1992, the trial court, with the victim's consent, reviewed in camera her psychiatric records from Norwich State Hospital, where she had received

treatment in 1976 and 1987. The trial court determined that those records did not contain information meriting disclosure for impeachment purposes.

The foregoing factors collectively establish that the defendant failed to satisfy the threshold requirement for an in camera inspection of the victim's psychiatric records from New Britain General Hospital. Accordingly, his claim that the trial court should have disclosed those records is unavailing.

## B

The defendant next claims that we should overrule our Supreme Court's holding in *State* v. *Harris*, supra, 227 Conn. 768–69. Specifically, "[t]he defendant urges this court to reconsider [our Supreme Court's] stance on this issue which limits inspection of privileged records to in camera inspection by the trial judge." It is not, however, within our province to overrule a decision of our Supreme Court. *State* v. *Oliver*, 41 Conn. App. 139, 146, 674 A.2d 1359, cert. denied, 237 Conn. 920, 676 A.2d 1374 (1996). Accordingly, we decline the defendant's invitation.

## II

The defendant next claims that the trial court improperly denied his April 9, 1992 pretrial supplemental motion for disclosure of the names of the victim's mental health care providers. Specifically, the defendant claims that (1) the trial court's failure to order disclosure of that information deprived him of his right to confrontation under the sixth amendment to the United States constitution and article first, § 8, of our state constitution and (2) that pursuant to *State* v. *Pierson*, supra, 201 Conn. 228, the trial court should have conducted a voir dire of the psychiatric personnel who treated the victim to determine if they possessed relevant information concerning the victim's testimonial capacity. We disagree.

A

The defendant first claims that the trial court improperly denied his pretrial supplemental motion for disclosure of the names of the victim's mental health care providers, in violation of his right to confrontation under the federal and state constitutions. We disagree.

Additional facts are necessary to a resolution of this claim. On April 9, 1992, the defendant filed a pretrial motion for disclosure, asking the trial court "to order the [state] to provide [him] with . . . [t]he name and address of any psychiatrist, psychologist, social worker or therapist who" provided counseling or psychotherapy to the victim anytime prior to or subsequent to the date of the incident. As a basis for this request, the defendant claimed that he had accompanied the victim to several mental health facilities during the course of their relationship. The state objected to the defendant's motion, claiming that it was uncertain whether it could legally compel the victim to disclose that information.

The trial court did not order the state to ask the victim for the information but informed the state that it could ask the victim whether she had received psychiatric treatment. With the state's assistance, the defendant ultimately subpoenaed the victim's psychiatric records from four institutions. Those records were sealed and turned over to the trial court. The defendant concedes that "[t]he records of such counseling are afforded confidentiality pursuant to . . . General Statutes § 52-146e." The defendant points to no evidence in the record that the state possessed the information that he requested.

In our discussion of the defendant's first claim, we demonstrated that our Supreme Court has established a specific procedure that the defendant must follow if he wants to obtain for impeachment purposes any

information contained in the victim's privileged psychiatric records. See *State* v. *Pratt*, supra, 235 Conn. 607–609; *State* v. *Howard*, supra, 221 Conn. 457–58. "The procedure reflects a deliberate and careful balancing of the defendant's right to confrontation and cross-examination against the public policy in preserving confidentiality in such records." *State* v. *Pratt*, supra, 607–608. Although the defendant claims that he "has to be provided with the names of and access to the actual providers," precedent holds that the defendant cannot circumvent the established procedure by obtaining direct access to any information, including the names of mental health care providers, that is contained in the victim's privileged psychiatric records.

In making his offer of proof on April 20, 1992, the defendant was afforded an opportunity to convince the trial court that he should gain access to the victim's psychiatric records. The defendant neither cites, nor can we locate, any authority that requires the trial court to circumvent the foregoing procedure and to disclose directly to the defendant any information, including the names of mental health care providers, that is contained in the victim's privileged psychiatric records to assist him in making the requisite showing. We conclude, therefore, that the defendant's claim is without merit.

B

The defendant next claims, relying on *State* v. *Pierson*, supra, 201 Conn. 228, that the trial court should have conducted a voir dire of the victim's mental health care providers to determine if they possessed relevant information concerning the victim's testimonial capacity. We disagree.

In *Pierson*, our Supreme Court held that "[t]he procedure we established in *Esposito* . . . for permitting the trial court, with the consent of the witness, to review in camera the records of psychiatric treatment that are

before the court must be modified if a defendant is to have the same protection of his constitutional right of confrontation in respect to *unrecorded communications* made confidential by [General Statutes] § 52-146e. Where there is any reasonable basis in the evidence for believing that psychiatric personnel may have information relating to the mental condition of a witness that might affect his testimony, the court must conduct a voir dire of the person who may possess such information in order to discover whether it would be admissible. This preliminary inquiry may be conducted only with the consent of the witness sought to be impeached, but, unless such consent is forthcoming, the testimony of the witness must be stricken. The voir dire for the purpose of determining the existence of such impeaching evidence must be conducted in the courtroom in the presence of the defendant and his counsel, who shall be allowed to participate fully in the proceeding. . . . If, after conducting such a voir dire, the court decides that some of the evidence elicited is admissible at trial, the defendant shall be permitted to use it, but the remaining confidential communications shall be sealed." (Citations omitted; emphasis added.) *State* v. *Pierson*, supra, 201 Conn. 228.

The defendant's reliance on *Pierson* is misplaced. "*Pierson* applies to situations in which there is a reasonable basis for the trial court to conclude that communications between the witness and the psychiatric personnel were not recorded and that those unrecorded communications may be relevant to the testimonial capacity of the witness." *State* v. *Boutwell*, 18 Conn. App. 273, 278, 558 A.2d 244, cert. denied, 212 Conn. 803, 561 A.2d 945 (1989). The defendant satisfied neither of those requirements. There was no reasonable basis for the trial court to conclude that there were unrecorded communications between the victim and psychiatric personnel. The defendant presented no evidence as to

the existence of any unrecorded communications. Moreover, the defendant offered no evidence of additional recorded communications between the victim and psychiatric personnel. In his motion for a new trial, the defendant claimed that the trial court did not possess all of the victim's psychiatric records. The trial court responded that "[s]o far as the records are concerned, I do not know of any other records that were . . . not [made] available and counsel [for the defendant] has not put forward to the court any indication that the state in any way concealed or that [the victim] concealed any other records that were available."

Additionally, because the trial court determined, after an in camera review, that the victim's psychiatric records from United Services, Hartford Hospital and Norwich State Hospital did not contain information meriting disclosure, the trial court had no reasonable basis to believe that the psychiatric personnel who prepared these reports would have unrecorded information meriting disclosure. We conclude, therefore, that it was unnecessary for the trial court to conduct a voir dire examination of the psychiatric personnel who treated the victim.

## III

The defendant next claims that the trial court improperly admitted into evidence a letter as evidence of his consciousness of guilt. Specifically, the defendant contends that the letter was inadmissible because the state did not establish that it was written by him or with his knowledge, consent or authorization, and the prejudicial impact of the letter outweighed its probative value. We disagree.

At trial, outside the presence of the jury, the state moved to introduce, as evidence of the defendant's consciousness of guilt, a letter, written in English but not in the defendant's handwriting, that urged the victim to move and not appear in court. The state contended

that, although this letter was not written in the defendant's handwriting, several factors established that it was written and mailed pursuant to the defendant's authorization.

The state claimed that the letter had reiterated the contents of a recent telephone conversation between the victim and the defendant, in which the defendant had told the victim to move and not to disclose her new address so that court officials could not contact her. Moreover, the victim testified that, although the letter itself was not written in the defendant's handwriting, it had arrived in an envelope that contained the defendant's handwriting and art work. The art work and handwriting on the envelope were similar to that of several other letters and envelopes that the victim had received from the defendant while he was incarcerated. The victim testified that the defendant had taken art lessons while he was incarcerated. The defendant objected to the admission of the letter, arguing that it was inadmissible because the state did not establish that the letter was written by him or with his knowledge, consent or authorization. The trial court overruled the defendant's objection and admitted the letter as evidence of the defendant's consciousness of guilt.

"In a criminal trial, it is relevant to show the conduct of an accused, as well as any statement made by him subsequent to the alleged criminal act, which may fairly be inferred to have been influenced by the criminal act." (Internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 729–30, 631 A.2d 288 (1993). Our case law has repeatedly "approved the admission of threats against or attempted intimidation of witnesses as evidence of consciousness of guilt." *State* v. *Leecan*, 198 Conn. 517, 534, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). "The general rule is that threats against witnesses are not relevant and are thus inadmissible as evidence unless

the defendant is linked in some way to the making of the threats." (Internal quotation marks omitted.) *State* v. *Robinson,* supra, 730; see also *State* v. *Brokaw,* 181 Conn. 475, 478–79, 436 A.2d 6 (1980). "[T]he trial court is given *broad discretion* in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." (Emphasis in original; internal quotation marks omitted.) *State* v. *Perry,* 48 Conn. App. 193, 200, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

The trial court did not abuse its discretion by admitting the letter into evidence because there was sufficient information to establish that it had been written pursuant to the defendant's consent or authorization. The handwriting and art work on the envelope were similar to that of several other letters and envelopes that the victim had received from the defendant. Moreover, the victim testified that the letter had reiterated the contents of a recent telephone conversation that she had had with the defendant.

The defendant also claims that the prejudicial impact of the letter outweighed its probative value and, therefore, it was inadmissible. "[I]f evidence of threats that indicate consciousness of guilt is sought to be admitted, [b]efore [such] evidence is allowed to be given . . . the court must also consider whether its prejudicial tendency outweighs its probative value." (Internal quotation marks omitted.) *State* v. *Robinson,* supra, 227 Conn. 730. "Because of the difficulties inherent in [the probative-prejudicial] balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Perry,* supra, 48 Conn. App. 201.

The trial court did not abuse its discretion by admitting the letter into evidence. Although the contents of the letter may have been damaging to the defendant's

position at trial, that result, without more, does not constitute unfair prejudice. "All adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted." (Internal quotation marks omitted.) *State* v. *Robinson*, supra, 227 Conn. 732. "Prejudice is not measured by the significance of the evidence which is relevant but by the impact of that which is extraneous." *State* v. *DeMatteo*, 186 Conn. 696, 703, 443 A.2d 915 (1982).

The letter was not extraneous to the issues at trial and did not inject confusing or time consuming issues into the proceedings, nor did it provoke an undue emotional response. See *State* v. *Robinson*, supra, 227 Conn. 732; *State* v. *Holliman*, 214 Conn. 38, 52, 570 A.2d 680 (1990). Moreover, before admitting the letter into evidence, the trial court minimized the potential for prejudice by providing the jury with a limiting instruction.[12] We conclude, therefore, that the trial court did not abuse its discretion by admitting this letter as evidence of the defendant's consciousness of guilt.

## IV

In his final claim, the defendant contends that the trial court improperly denied his motion to dismiss counsel in violation of the sixth amendment to the United States constitution and article first, § 8, of our

[12] The trial court instructed the jury: "The evidence that is about to be offered at this time is admitted under the principle of law known as consciousness of guilt, and where a defendant says something or does something which would tend to have a fact finder believe that it tends to avoid a prosecution or attempts to avoid a finding of guilt to which a penalty might be imposed, you fact finders may consider that offer in that nature. However, it is not offered to show bad character or propensity to commit crime. It is solely offered if you find the circumstances to have existed, and you find further if they did exist they tend to indicate the defendant was attempting to avoid prosecution or avoid a finding which would include a penalty, you may consider it along with all the other evidence in the case as to your final decision of guilt or not guilt."

state constitution. Specifically, the defendant contends that he could not communicate effectively with his attorney and was therefore deprived of his constitutional right to the assistance of counsel. We are not persuaded.

On April 10, 1992, the defendant made an oral motion, petitioning the trial court to remove his court-appointed counsel. The defendant claimed that he could not communicate effectively with his counsel because of a language barrier. Additionally, the defendant alleged that defense counsel frequently refused to answer his questions and to listen to his explanations. The trial court denied the defendant's motion, finding that the defendant's complaint, raised on the eve of trial, was insufficient to warrant dismissal of defense counsel. On April 20, 1992, after the state had nearly completed its direct case, the defendant renewed his motion to dismiss counsel, and the trial court denied the motion.

"Our state and federal constitutions guarantee a criminal defendant the right to assistance of counsel. U.S. Const., amend. VI; Conn. Const., art. I, § 8." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996). "While a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of [the] defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial. . . . In order to work a delay by a last minute [replacement] of counsel there must exist *exceptional circumstances.* . . . Whether the circumstances warrant the appointment of new counsel is within the discretion of the trial court. . . . A court need not permit the replacement of counsel upon a defendant's mere whimsical demand and certainly not where it is evident that a professed disenchantment with his lawyer is a subterfuge to secure an unwarranted delay in the trial." (Citations omitted;

emphasis added; internal quotation marks omitted.) *Sekou* v. *Warden*, 216 Conn. 678, 686–87, 583 A.2d 1277 (1990). "Although under some circumstances a complete breakdown in communication between a defendant and his counsel may warrant appointment of new counsel . . . it may not be used to achieve delay." (Citations omitted.) *State* v. *Lee*, 32 Conn. App. 84, 100–101, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994). "We must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve of or in the middle of trial." Id., 101. "It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . . [A]bsent a factual record revealing an abuse of [the court's] discretion, the court's failure to allow new counsel is not reversible error." (Citation omitted; internal quotation marks omitted.) Id.

Applying this standard to the record before us, we conclude that the trial court did not abuse its discretion by denying the defendant's request to dismiss counsel. The trial court properly determined that there was not a complete breakdown of communication between the defendant and his counsel. The defendant spoke only in Spanish and, although defense counsel could not speak Spanish, he used court-appointed interpreters to communicate with the defendant. Moreover, the trial court observed that, throughout voir dire and the trial, defense counsel frequently communicated with the defendant.[13] In addition, given the timing of the defendant's motions, it was reasonable for the trial court to

---

[13] The trial court stated that it "had observed through the procedure of voir dire that [defense counsel] has always [gone] over to the [defendant], discussed with him each of the venirepeople who had been examined as to whether or not, I assume, he wanted to accept them. And there has been no evidence that there was ever any contest with [defense counsel] by him, that he did speak with the interpreters that have been here, and there had

interpret his conduct as an attempt to delay the trial. We conclude that the trial court did not abuse its discretion in denying the defendant's motion to dismiss his counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

been obvious discussions through some seven days of trial, which includes voir dire of course." The trial court stated that although defense counsel's inability to speak Spanish may have hampered his ability to communicate with the defendant, nevertheless "it has been obvious to me that there has been discussion with the interpreter by the defendant and through the interpreter to [defense counsel]."